## JAMES QUIRK v. EDWARD A. EVERETT.[1]

January 15, 1909.

Nos. 15,884—(133).

**Trust—Evidence and Findings Sustain Decision.**

> Action to compel the defendant to account for one-half of certain money, bonds, and shares of stock alleged to have been received by him as trustee for the plaintiff. Findings of fact and conclusions of law were made in favor of the plaintiff. *Held*, that the findings are sustained by the evidence and that they justify the conclusions of law.

Action in the district court for Waseca county to obtain an accounting between plaintiff and defendant and to compel defendant to deliver to plaintiff one half of certain money, bonds and shares of stock alleged to have been received by him as trustee for the plaintiff. The facts, as found by the trial court, are stated in the opinion.

The complaint alleged that the purchase of the property of the Canal Company at the master's sale, mentioned in the opinion, was in the name of Miller, for the use and benefit of plaintiff and defendant, and that the conveyance by Miller and the payments received by him were made and received by him for and in behalf of plaintiff and defendant. The answer denied that Miller in anything that he did acted for and in behalf of plaintiff and defendant, and denied that plaintiff and defendant ever carried out the contract designated Exhibit A.

The case was tried before Buckham, J., who made the findings given in the opinion and ordered judgment in favor of plaintiff. From an order denying a new trial, defendant appealed. Affirmed.

The action in the Texas court which is mentioned in the opinion was one for the appointment of a receiver of the insolvent Nile Valley Canal Company, in which action plaintiff and defendant, as individual owners of bonds of that company which were secured by one trust deed, intervened. The liens prior to that of these bonds amounted to $12,000.

[1] Reported in 119 N. W. 63.

Defendant's letter to the plaintiff mentioned in the opinion (Exhibit K 2) is as follows:

"Waseca, Minn. April 15th, '03.

"Mr. James Quirk,

"Minneapolis, Minn.

"Dear Sir:

"Enclosed please find copy of letter from Baker, Botts & Baker, and will say that the bonds and other papers sent by express have not yet arrived. Will advise you promptly as soon as I receive them. Presume you will want the $5000 of these turned over to the bank in place of the $5000 bonds which you have there. Please advise me if this is your wish.

"You will note the status of the DeBruin claim. This claim was bobbed in in a manner that was entirely unexpected to any of us. Presume we will have to look after it in order to protect our title, although I had written Mr. Baker on receipt of his wire stating that DeBruin had attached that (sic) the money, that is, the $12,000 which was sent down there to buy the Canal in was money that neither you nor I had any interest in. As a matter of fact, Guy sent the money down. Thought it would be best to have it that way so that Mr. Miller acted as trustee for Guy, not for you nor for me, except he acted for me in the matter of collecting in the $1,000 receiver's certificate.

"Wish you would consider this matter fully from all points and write me such a letter as you think I had best send to Baker, Botts & Baker. It might be, Mr. Quirk, that DeBruin would still be willing to settle and release his claim against you by the payment of $300 or $400. If you think best, perhaps we had best have the attorneys try to effect settlement on that basis. We would each then pay half of whatever was required. Please advise me and also please after carefully considering the matter write me a letter for me to write the attorneys showing our defense in this matter.

"Yours truly,                                        Everett, E. A.

"E."

Plaintiff's answer to this letter (Dfts. Exhibit 12) was dated Minneapolis, April 16, 1903, and addressed to defendant. It began: "For the benefit of Messrs. Baker, Botts & Baker, who are looking after your

interests at Bay City, and who write that Mr. DeBruin has commenced action against me and filed an attachment against the Canal, claiming that I am still interested in the redemption of the same, I will give you the following facts, about as I understand the claim that Mr. DeBruin has based his action on."

The facts relating to the DeBruin matter were then given and the letter closes as follows: "I cannot see what object he would have in trying to file a lien against the canal property, redeemed as I understand you to write by Mr. Miller, as I contributed not a single cent to its redemption."

*P. McGovern, H. R. Pfau, Jr.,* and *John Moonan,* for appellant.

If, as defendant claims, Guy Everett bought the canal property at the master's sale, then plaintiff has failed to prove his case. If the trust set out in the bill is an implied or constructive trust, and not an express trust, no recovery can be had on the ground of express trust. McMonagle v. McGlinn, 85 Fed. 88. See Wilson's Executors v. Cobb's Executors, 28 N. J. Eq. 177; Forrest v. O'Bryan, 126 Iowa, 571. The plaintiff must produce more than a bare preponderance of evidence, and must make out his case clearly and satisfactorily to be entitled to a decree. Rice v. Rigley, 7 Idaho, 115; Skeen v. Marriott, 22 Utah, 413; Mobile v. Randall, 71 Ala. 220; Woodside v. Hewel, 109 Cal. 481; Heneke v. Floring, 114 Ill. 554, 558; Parmlee v. Sloan, 37 Ind. 469, 482; Sunderland v. Sunderland, 19 Iowa, 325, 329; Whitmore v. Learned, 70 Me. 276, 284.

Defendant and plaintiff were individual owners of bonds of the Nile Valley Canal Company. There was no joint ownership. The joint prosecution of the intervention proceedings did not create any new obligation or impose any new duty on defendant. Wilson's Executors v. Cobb's Executors, supra. Any obligation assumed when defendant went to Texas was fully carried out. He assumed no further duty and the law imposed none on him. The option contract did not contemplate the purchase alleged in the bill, nor did it require defendant to furnish any money for plaintiff, and no more duty rested on defendant to buy the canal than on plaintiff. Commercial v. Weldon, 148 Cal. 601; Dobbins v. Peabody, 199 Mass. 141; Forrest v. O'Bryan, supra; Miller v. Butterfield, 79 Cal. 62; Scribner v. Meade (Ariz.) 85

Pac. 477; In re Yeager, 100 Pa. St. 88; Gloeckner v Kittlaus, 192 Mo.. 477; Loveland v. Fisk, 18 Colo. 201; Bissell v. Foss, 114 U. S. 252..

Plaintiff and defendant were never more closely connected than the stockholders in any corporation. No fiduciary relation existed between them. Patten v. Warner, 11 App. (D. C.) 149; Dobbins v. Peabody, supra. The rule that a person occupying a fiduciary relation cannot lawfully purchase the property of his correlate for his own benefit does not apply to judicial sales. Steinbech v. Bon Homme Mining Co.,. 152 Fed. 333; Allen v. Gillette, 127 U. S. 589. Plaintiff abandoned the enterprise and refused to put more money into it. Bates, Part. 312.. The rights at sale conclude the parties. Mackall v. Olcott, 87 N. Y.. Supp. 757.

Shortly after the sale plaintiff made a trust deed of all his property to secure his creditors. This deed included his homestead but did not include the property involved in this action. This is conclusive evidence that at that time plaintiff made no claim to the property.

*Wilson & Mercer,* for respondent.

The answer contains no such defense as that Guy Everett bought the property. If it had been pleaded that he had the bonds, he would have been made a party, and the complaint would have been amended. Neither was necessary because defendant admitted they were sent to and kept by him. Newman v. Schwerin, 109 Fed. 942, 948. There was no motion to amend the findings in either of these particulars. And a purchase by Guy Everett would not have been a defense. Stitt v. Rat. Portage Lumber Co., 98 Minn. 52. This is the controlling rule in this case.

The equitable jurisdiction of the court in an accounting rests on either (a) the existence of a fiduciary or trust relation; (b) the complicated character of the accounts; or (c) a need of discovery. Obtaining and keeping the property in question under the circumstances. expressed in the pleadings created a trust. Flynn v. Foley, 91 Minn.. 444; Brown v. Maplewood Cemetery Assn., 85 Minn. 498; Anderson v. Dyer & Bro., 94 Minn. 30. The findings show the trust here. As. claimed in the complaint, shown by the evidence and found, accounting was necessary. Anderson v. Dyer & Bro., supra; Brown v. Maplewood Cemetery Assn., supra. Discovery was needed as the informa-

tion was denied and the trust repudiated. There is no question but that the defendant in this case had repudiated the trust. Repudiation and refusal to account are grounds for action. Brown v. Maplewood Cemetery Assn., supra.

It is in cases like this where the morality of the particular individual —the conscience of the defendant—does not extend to a willingness to perform justice, that the state, through its conscience, exercises its equitable powers to compel the observance of a system of public conscience which it administers out of rebuke to the one and protection to the other interested parties.

Counsel's authorities are all either inapplicable to this case or obsolete in this court. In Mackall v. Olcott, 87 N. Y. Supp. 757, the express trust was not established. The complaint here is found to be true. The principle in McMonagle v. McGlinn, 85 Fed. 88, has been reversed by Savings & Loan Soc. v. Davidson, 97 Fed. 696, 702, 703.

Appellant's contention that preponderance of evidence was not enough to compel him as a trustee to give up plaintiff's property in a court of equity is palpably wrong and inapplicable. Rice v. Rigley, 7 Idaho, 115; Mobile v. Randall, 71 Ala. 220. Appellant's cases on this point were all land cases where it was generally sought to establish trusts by parol, many of them in courts holding that such trusts could not be orally established because of the statutes of frauds, contrary to the true rule as adopted by this court. They are not applicable to these facts and not the rule of this court. Trusts of personal property not being within the statute of frauds need only be proved by sufficient oral evidence to show the intention to create the trust. 28 Am. & Eng. Enc. (2d Ed.) 870. In Minnesota preponderance of evidence is the rule in all civil cases, even though they involve the proof of a crime to establish the civil case. Demeules v. Jewel Tea Co., 103 Minn. 150, 153; Lillstrom v. Northern Pacific R. Co., 53 Minn. 464, 468; Shevlin v. Shevlin, 96 Minn. 398, 407; Thoreson v. Northwestern Nat. Ins. Co., 29 Minn. 107; State v. Nichols, 29 Minn. 357, 359. "Preponderance" of evidence, "weight," of evidence, "clear" evidence, "satisfactory" evidence, may all be considered from the standpoint of technical arguments, but in the trial of a civil case like this, the truth is the end sought, and whenever there is sufficient evidence upon one side of the case, that the court taking all the evidence believes that that side pre-

sents the truth, the rule, whatever it may be, is satisfied, and that is the case here.

Defendant's attitude seems to be that a court of equity in this case cannot go nearly as far as the ordinary rule of honor and conscience. This does not agree with the whole system of the Roman jurisprudence from which England got its original equity or with the system of equity developed according to the conscience of the common-law peoples. "There is no wrong without a remedy." Indeed, this court has gone further than to hold that equity must be with honor and conscience, and has held that there are cases where the system of equity as a system justly goes beyond the ordinary limits of honor and conscience. Shevlin v. Shevlin, supra; Stitt v. Rat Portage Lumber Co., 98 Minn. 52, 56.

Appellant erroneously claims that he could violate his trust and make the purchase. First State Bank of LeSueur v. Sibley County Bank, 96 Minn. 456, 460. The true rule of the United States supreme court applicable here is stated in Michoud v. Girod, 4 How. 503. See Bay State Gas Co. v. Rogers, 147 Fed. 557, 572; Mead v. Darling, 151 Fed. 1006; 8 Current Law, 2195, note 99; Harvey v. Sellers, 115 Fed. 757.

Defendant is not damaged and has no equitable defense; he was not led to do something which he would not otherwise have done. Western Land Assn. v. Banks, 80 Minn. 317; Sanborn v. VanDuyne, 90 Minn. 215, 226.

START, C. J.

This is an action brought in the district court of the county of Waseca to compel the defendant to account for one-half of certain shares of stock, bonds, and money which the complaint alleged he had received as trustee for the plaintiff. The cause was tried by the court without a jury, and facts found to the effect following:

In January, 1903, in an action then pending in the district court of Matagorda county, Texas, a judgment was duly rendered therein in favor of the plaintiff and defendant in this action against the Nile Valley Canal Company, a Texas corporation, hereinafter referred to as the "Canal Company," for $82,595.62, which was the property of the plaintiff and defendant herein, share and share alike. The court in

and by the judgment ordered all the properties of the Canal Company
to be sold at public auction to satisfy, among other judgments duly
given and entered in such action, the judgment of the parties hereto,
and for such purpose duly appointed a master to make such sale.
Thereafter, and on January 31, 1903, the parties hereto entered into a
written contract with the Hurd-Ford Investment Company, also a Tex-
as corporation, and hereafter referred to as the "Investment Com-
pany," a copy of which is a part of the complaint herein and designated
as "Exhibit A." The parties hereto by such contract, in consideration
of 100 shares of the Sabine Canal Company, a Delaware corporation
with a canal at Vinton, Louisiana, gave to the Investment Company
the option either for the purchase of their judgment or for the pur-
chase, as provided by section 2 of the contract, of the property of the
Canal Company in case it should be sold to them at the sale thereof, on
the terms stated in the contract.

In order to carry out this agreement on the part of the parties here-
to, it was necessary that R. Miller, their agent, who was to be present
at the master's sale on their behalf, should be furnished sufficient
funds with which to pay for the properties of the Canal Company, if
the same should be struck off to him at such sale. It was necessary for
this purpose to advance to him the sum of about $12,000. It was
known to the parties at the time of the execution of Exhibit A, and
when preparations were being made for carrying out the same by a
purchase at such judicial sale, that if the Investment Company should
perform its part of the said agreement and at once purchase and pay
for the properties, it would be necessary to advance such money only
temporarily, but that, in case the Investment Company failed so to per-
form, the money so advanced would remain permanently invested in
the purchase of the properties before mentioned, besides that already
so invested by the plaintiff and defendant.

Several consultations were had prior to such sale between the par-
ties, in which the defendant requested and urged the plaintiff to fur-
nish his share of the money necessary to purchase the property, and
the plaintiff expressed his unwillingness and inability so to do; but
the plaintiff never positively refused to make such advances, nor did
the defendant ever in any manner notify the plaintiff of any intention
on his part to purchase the property for his own exclusive benefit, ei-

ther in his own name or through some one else, in case plaintiff made default, or that he would in that event treat him as having abandoned all interest in the judgment and in whatever steps were taken to realize therefrom. In fact, plaintiff did not furnish any money for such purchase.

The defendant and his brother Guy Everett were, at the time of the transaction herein referred to, members of the milling firm of Everett, Aughenbaugh & Co., and at the request of the defendant Guy Everett drew out of the funds of their company the sum of about $12,000 and procured a draft for the same and gave it to the defendant to send to Miller, who was defendant's father-in-law, to be used in making the purchase of the properties of the canal. After such purchase and the sale to the Investment Company, as hereinafter mentioned, the money was returned to the defendant and by him paid over to the firm of Everett, Aughenbaugh & Co. for and on account of Guy Everett, to replace the money so withdrawn for such purchase. At the time of such purchase Guy Everett was in fact the owner of $5,000 of the original investment in the Canal Company held in the name of the defendant, but without the knowledge of the plaintiff. On the delivery to the defendant of the bonds of the Gravity Canal Company as hereinafter mentioned, the defendant turned over in satisfaction of such interest to Guy Everett $5,000 of such bonds.

The draft so procured by the defendant was by him forwarded to Miller; and under and pursuant to the decree all the properties of the Canal Company were sold by the master's sale, on April 7, 1903, to Miller in his own name, who was then acting under the instructions of the defendant to carry out the terms of Exhibit A. He paid therefor the sum of over $13,000, and the property so purchased was on the same day duly conveyed to him by the master. On the same day Miller, in accordance with the terms of the agreement made by the plaintiff and defendant contained in section 2 of Exhibit A, duly conveyed to the said Gravity Canal Company, the assignee of the Investment Company, by proper deed, all properties so purchased by and conveyed to him. The consideration paid to Miller for such conveyance was $13,-242.50 in money, the transfer and delivery to him of 674 shares of the capital stock of the Sabine Canal Company, of the par value of $100 each (in addition to the shares of such capital stock delivered to the

defendant at the time the contract, Exhibit A, was entered into), and the execution and delivery to him by the Gravity Canal Company of its first mortgage bonds in the aggregate amount of $42,500, secured by its mortgage, pursuant to the option contained in Exhibit A, by a mortgage executed to the defendant herein, as trustee, of all its property, franchises, and rights of way.

On or about April 11, 1903, all of the money, stocks, and bonds so received by Miller were by him turned over and delivered to the defendant, who has ever since retained the same, except the sum of $5,522.08 paid out by him for costs, expenses, and legal services incurred in and about the business of the Canal Company. The defendant has ever since had the exclusive possession of all such money, stock, and bonds, and has refused to deliver or pay over any part thereof to the plaintiff, and claims that he has no interest therein. The defendant has collected the interest on the bonds, which are worth their full value, as it became due; but the shares of stock are practically worthless.

As a conclusion of law the trial court found that the defendant, in all of the proceedings stated in the findings of fact, acted for the plaintiff as well as for himself, and that as to all such money, bonds, and stock he holds the same as trustee for himself and the plaintiff, and that he delivered one-half thereof, less sums properly chargeable against the same to the plaintiff. Judgment was ordered accordingly. The defendant appealed from an order denying his motion for a new trial.

The assignments of error relate to the rulings of the trial court in the admission of evidence, to the sufficiency of the evidence to support the findings of fact, and to the sufficiency of such facts to sustain the court's conclusion of law. The alleged errors as to rulings of the court on the trial are not urged in the brief of defendant; hence are waived. The record, then, presents the general question: Are the findings of fact sustained by the evidence, and, if so, do they sustain the conclusion of law?

The complaint herein alleged, in effect, that the plaintiff and defendant purchased the property of the Canal Company at the master's sale, but in the name of Miller, for the use and benefit of both of them. This allegation was put in issue by the answer. The complaint also

contained other allegations of fact, which, if proven, would justify the conclusion that the defendant received money and other property in which the plaintiff was equally interested with himself, and that he is chargeable as trustee of one-half thereof for the plaintiff, and must account for the same to him. The allegations of the complaint must be construed as a whole, and, so construing them, the contention of the defendant, to the effect that upon the pleadings the plaintiff's sole basis for relief is an allegation in the complaint of the creation of an express trust by the contract of the parties, is not tenable.

The findings of fact are not a departure from the cause of action alleged in the complaint, for the court found evidentiary facts from which the conclusion necessarily follows that Miller acted at the master's sale as the agent of each of the parties hereto. We are satisfied, after a full examination of the record, that the findings of fact are sustained by the evidence. Indeed, it would seem that the defendant's letter to the plaintiff, Exhibit K 2, written after the sale of the property of the Canal Company had been closed, must be construed as an express recognition and admission by the defendant of the plaintiff's interest in the proceeds of such sale; but in any event the findings are fairly sustained by the evidence.

The only other question to be considered is whether the facts, as found by the trial court, sustain its conclusions of law. In this connection defendant urges that the trial court, in effect, found that Guy Everett bought the canal properties at the master's sale for his own benefit. It is apparent, from the conclusion of law reached by the learned trial judge, that he did not have even a suspicion that he had so found; nor is there anything in the findings of fact that can be reasonably construed as supporting the defendant's contention. The relation of Guy Everett to the purchase of the properties as disclosed by the evidence was as stated in the findings, and not otherwise.

We hold that the findings of fact are sustained by the evidence, and that they justify the conclusion of law and order for judgment of the trial court.

Order affirmed.